## CIRCUIT COURT OF WARREN COUNTY

John W. Johnston

v.

Carol P. Johnston

June 26, 1981

Case No. (Chancery) 4046

By JUDGE HENRY H. WHITING

This case involves a suit for partition of property now held as tenants in common by John W. Johnston with his divorced wife, Carol P. Johnston. The tenancy was formerly one by the entireties, but upon the grant of a divorce decree to Mr. Johnston in the Superior Court of Maricopa County, Arizona, on November 4, 1980, that tenancy was converted by operation of law into a tenancy in common under the provisions of Virginia Code § 20-111. The wife has filed the following pleadings in which she attempts to insert into this case a claim for spousal and child support:

(1) First affirmative defense alleging that a reliance upon the Arizona Court's decree is inequitable, apparently because Arizona had not acquired *in personam* jurisdiction over the wife in the divorce suit.

(2) Second affirmative defense asserting a right to spousal support, apparently as a defense and contending that this Court should "partition the subject real estate so as to award [wife] the property as spousal support/alimony or so as to provide [wife] with reasonable support or alimony."

(3) A cross-bill setting forth the respective incomes of the parties and seeking: (a) a dismissal of the bill of complaint for partition; or (b) an award of the entire property or the proceeds therefrom as spousal support;

or (c) reasonable spousal support of no less than One Hundred Fifty Dollars ($150.00) a month.

The husband has moved to strike all the above portions of the pleadings, argument has been had and briefs submitted on the issues.

May these "defenses" be properly considered in a partition suit?

A careful review of the history of the partition statute is necessary to answer the question. While Dean Ribble and Mr. Barton do not agree as to whether the original common law writ of partition is completely superseded by the statute (compare *Minor on Real Property*, Ribble Edition, paragraph 891, with *Barton's Chancery Practice*, Second Edition, page 243), both agree that writ has been effectively supplanted and virtually superseded by the partition statute, Virginia Code § 8.01-81, *et seq.*, and this "may be said to be the only method of compelling partition." (Barton at 243) A careful review of the cases under the statute indicates that while a partition court exercises its broad chancery jurisdiction to administer complete relief and adjust all the equitable rights of the parties interested in the estate, *Price v. Simpson*, 182 Va. 530, 535 (1944), that broad power is limited to matters which are *germane to the partition* and the partition court jurisdiction may not be expanded to embrace matters outside the adjustment of the rights of the parties in the property being partitioned. This is illustrated in *Adkins v. Adkins*, 117 Va. 445 (1950), where the court refused to adjudicate the liability on two negotiable notes owed by the defendant to the complainant on the ground that they:

> have no relation to, or connection with, the estate sought to be here partitioned. If due at all, they represent matters wholly foreign to the estate here involved. . . . The provision of the [partition] statute is that in a partition suit, a court of equity "may take cognizance of all questions of law affecting the legal title that may arise." The jurisdiction of the court is limited to the settlement of questions affecting the legal title to the subject of partition. The object of the statute was

to obviate the delays and difficulties which frequently arose in partition suits where questions of title were involved, but there is no provision for the settlement, in a suit for partition, of all controversies that may arise between tenants in common, growing out of their general indebtedness to each other, which has no relation to or bearing upon the title to the subject of partition. (Citing a Virginia case.) 117 Va. 449-450.

The wife argues that Rule 2:13 of the Rules of the Supreme Court of Virginia provides an expanded right of cross-claim sufficient to include her claim for spousal support in a partition suit, contending that any matter which is "germane" may be so litigated. Apart from the limited jurisdiction this Court has in a partition suit, as outlined in *Adkins, supra,* the Court cannot find that alimony is "germane" to partition and that is the exact holding in *Starling v. Starling,* 107 S.E.2d 651 (Ga. 1959), where that Court denied a wife's claim for accounting on personal property sold by the husband without making proper accounting to her in a partition of land between husband and wife. While this Court has not seen the Georgia statute, the rationale would seem in accord with *Adkins* and the Virginia rule providing that the wife:

> can only set out matters germane to the case as made by the [husband's] petition and cannot recover a personal judgment against the [husband] on a separate and independent matter. . . . (citing two cases.) And a cross-action which sets up matters unrelated and unresponsive to the plaintiff's petition is not germane to the case; and it is, for that reason, not maintainable. (107 S.E.2d at 653-654.)

The language of Rule 2:13 does not appear to have any limitations on its scope. However, contrary to the contention of the wife in the middle of page 9 of her memorandum of May 29, 1981, it is *not* a matter of both *substance* and procedure but is merely procedural and,

as the case of *Brewer v. Brewer* annotated thereunder points out, such:

> a cross-bill is an aggressive pleading, rather a sword than a shield, with its subject matter restricted or limited to that which is germane to, or an outgrowth of, the original bill. The restriction as to subject matter extends to the introduction of issues that are not within the scope of the original bill. . . . (199 Va. at 628.)

In both *Brewer* and the cases it discussed, the cross-bills which were permitted all clearly related to matters raised in the original bill.

The wife argues that spousal support must necessarily be involved in this partition suit and, therefore, is germane to the right of partition and to the division of the proceeds of sale among the parties. The Court is unable to adopt the argument for the following reasons.

(1) If the husband had sold his undivided half interest to a third party, certainly the wife could not have asserted a right of support against that third party.

(2) The right of support turns on issues arising out of the marital relationship and may be lost by reason of fault on the part of the wife. This Court simply cannot imagine litigating an issue of fault in a marital relationship as something germane to a partition suit, even though between a divorced husband and wife.

(3) Even the wife recognizes that Virginia cannot award a specific piece of property as spousal support on pages 17 and 18 of her brief of March 19, 1981, but she argues that the partition statute can be so interpreted, citing three Virginia cases in support thereof on page 18 of the brief. A careful reading of those cases indicates that each of them is limited to an allocation in kind and has nothing whatever to do with transferring property in the discharge of a claim for spousal support. What the wife would have this Court do is to indirectly allocate the husband's interest in a partition suit to the wife to avoid the restriction of the Virginia cases against a direct allocation of property in a divorce suit in discharge of a duty to provide spousal support.

The wife contends (memorandum of May 29, 1981, pages 7, *et seq.*) that the Court may award lump sum alimony, referring to the provisions of Virginia Code § 20-107, in which an amendment was inserted to the existing statute in 1977 which provided:

> In addition to or in lieu of periodic payments for maintenance and support of a spouse, the Court may, in its discretion, award a lump sum payment, based upon consideration of the property interests of the parties except those acquired by gift or inheritance during the marriage.

What the wife fails to quote is the beginning paragraph of the statute, which the Court quotes with the obvious answer to her contention emphasized:

> *Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce,* whether from the bond of matrimony or from bed and board, and upon *decreeing that neither party is entitled to a divorce,* the court may make such further decree as it shall deem expedient concerning the maintenance and support of the parties, or either of them, and the care, custody and maintenance of their minor children, and may determine with which of the parents the children or any of them shall remain, provided, that the court shall have no authority to decree support of children or support and maintenance of the spouse to continue after the death of the person ordered to pay such support and maintenance. The court may provide in its decree for visitation privileges for grandparents, step-parents or other family members. The court shall, in determining such support and maintenance for the spouse or children, consider the following. . . (the statute then lists the considerations quoted by the wife on pages 7-8 of her memorandum of May 29, 1981).

Based on the foregoing, it is the Court's opinion that no part of the wife's claims for spousal support

may be litigated in any fashion in this partition suit and the Court will enter a decree sustaining each of the objections of the [husband] to pay any of the wife's claims therefor, reserving the wife's exceptions.